Reynolds *v.* Refuge Planting Co., et al.

No. 40505          September 23, 1957          97 So. 2d 101

*Kellner & Kellner,* Greenville, for appellant.

*Wynn, Hafter, Lake & Tindall,* Greenville, for appellee, Refuge Planting Company.

*C. S. Tindall, Jr.,* Greenville, for appellee, Board of Mississippi Levee Commissioners.

LEE, J.

In her bill of complaint against the Board of Mississippi Levee Commissioners and Refuge Planting Company, Pearl E. Reynolds alleged that she is the owner of the fee of the levee right of way over the lands as therein described, and that the interest of the Levee Board therein amounts to an easement only. She prayed for cancellation of the maintenance contract to Refuge Planting Company and for the recovery of the reasonable value for grazing its cattle on the right of way.

At the conclusion of the evidence, the court held that the maintenance contract was a valid and reasonable exercise of the rights and powers of the Board; that

deeds from George C. and Margaret Richardson Crawford to U. S. Gypsum Company and to D. S. Strauss divested grantors of all title to the property in question and Mrs. Crawford's subsequent quitclaim deeds to the Reynolds passed no title therein; and that Refuge Planting Company had obtained title to the land east of the center line of the levee by virtue of a conveyance of date of August 11, 1936, and by adverse possession for more than ten years. The final decree dismissed the original bill with prejudice, and cancelled the conveyances of the Reynolds, as prayed for in the cross-bill. Mrs. Reynolds appealed.

The substantial facts in the background of this litigation appear as follows: The Board of Mississippi Levee Commissioners was incorporated by an Act of the Legislature. Chapter 1, Laws 1865. Article 11, which includes Sections 227 to 239, inclusive, Constitution of 1890, provided for the maintenance of a levee system in the State. The power to appropriate private property was granted. Section 233 thereof. Many years ago a right of way for the levee system, approximately five miles long, was taken by eminent domain through Refuge Plantation in Washington County. As a consequence, the plantation was split into two parts with several thousand acres on each side of the levee.

On December 30, 1935, George C. Crawford and wife, Margaret R. Crawford, the then owners of the plantation, conveyed to the U. S. Gypsum Company, a Delaware corporation, "That part of Refuge Plantation in Washington County, Mississippi, located on the riverside of the levee as now located, and all secretions thereto," (describing the same according to section, township and range.) By mesne conveyances, this property passed to U. S. Gypsum Company, an Illinois corporation.

On August 11, 1936, Margaret R. Crawford conveyed to D. S. Strauss "All those parts of Refuge Plantation situated east of the levee line of the Board of Mississippi

Levee Commissioners, and on the land side thereof'',
(describing the same according to governmental sub-
divisions.) By mesne conveyances this property passed
to Refuge Planting Company, a corporation.

Millions of dollars, derived from local taxation and
appropriation of the Federal Government, had been spent
in building the levee system. Following the disastrous
flood in 1927, the Federal Government, by Act of Con-
gress of date of May 15, 1928, recognized its responsibil-
ity and assumed the major portion of the expenses there-
for, but required the cooperation of the Levee Board in
the proper maintenance of the levees.

The cost of maintenance of the levee system entailed
a substantial outlay annually. As a result of long ex-
perience, the Board many years ago found that the most
satisfactory and cheapest method of maintenance was
to enter into contracts whereby cattle were grazed on
the levee right of way at proper times and under proper
controls, together with the maintenance of proper fences
and cattle gaps, and the use of mowing machines and
other machinery and labor. This policy has been follow-
ed since; and Refuge Planting Company, for more than
six years, has been the contractor on this link.

On October 13, 1948, and November 9, 1948, T. P. Rey-
nolds obtained from Margaret Richardson Crawford
quitclaim deeds as follows: ''All that part of Section 1,
Township 17, Range 8 West, and all that part of Sections
3, 4, 12, and 13, Township 17, Range 9 West, formerly
owned by me and condemned for levee purposes by The
Board of Mississippi Levee Commissioners,'' and ''All
that part of Section 5, 6, 7, 8, 9, and 10, Township 17,
Range 9 West, formerly owned by me and condemned for
levee purposes by The Board of Mississippi Levee Com-
missioners.'' In each instance it was recited that ''This
conveyance is made subject to any rights of the Board
of Mississippi Levee Commissioners.'' On October 15,
1953, T. P. Reynolds conveyed and quitclaimed the above

described land to his wife, Pearl E. Reynolds, and subsequently on November 23, 1955, assigned to her all of his rights of every nature in the land.

The questions presented to the trial court and likewise raised in this appeal are whether the Reynolds acquired a fee title to the right of way by reason of their quitclaim deeds; whether Refuge Planting Company and U. S. Gypsum Company have acquired title thereto by adverse possession; and whether the Levee Board, by maintenance contracts, can exclude the adjacent owner from certain use of the right of way.

It will be noted that the deed to U. S. Gypsum Company was for "that part of Refuge Plantation * * * located on the river side of the levee as now located * * *", and to Strauss "All those parts of Refuge Plantation situated east of the levee line of the Board of Mississippi Levee Commissioners, and on the land side thereof."

The question then is whether these deeds passed the fee to the center of the levee, subject to the easement thereon.

In New Orleans & Northeastern Railroad Company v. Morrison, 203 Miss. 791, 35 So. 2d 68, the trial court held that the railroad company's two-hundred-foot right of way was a mere easement; that the heirs of the grantor owned the minerals under the right of way; and that the grantees and lessees of mineral interests had valid title thereto up to the center line of the right of way. In the partition deeds of the heirs among themselves, the allotments were described as lying "East (or West) of the * * * railroad." The ninth syllabus succinctly stated the general rule as follows: "Generally conveyances of land bordering on a railroad easement of right of way carry title in fee to the center line of the easement as to subsurface minerals, *and reversionary rights to the surface.*" (Emphasis supplied.) In that case, the heirs contended that they partited only such lands as lay outside the

easement strip, and claimed the minerals under the residuary strip as tenants in common. In rejecting this contention, the opinion said: ''The contention is ingenious, but upon the same vehicle by which we transport their rights beyond the side lines and unto the center, we cannot deny to their grantees and lessees equal passage.''

■■ The above rule as to reversionary rights to the surface in respect to land bordering on a railroad right of way, conforms to the rule that, where the monument is a stream, street or highway, the conveyance extends to and passes the title to the center thereof. 11 C. J. S., Boundaries, Section 31, p. 575, and Section 35, p. 580; 8 Am. Jur., Boundaries, Section 25, p. 763 and Section 36, p. 772; Morgan, et al. v. Reading, 11 Miss. 366, holding that the middle of the Mississippi River was the true western boundary line of the Mississippi territory; the Steamship Magnolia v. Marshall, 39 Miss. 109; Wineman v. Withers, 143 Miss. 537, 108 So. 708; Panhandle Oil Company v. Trigg, 148 Miss. 306, 114 So. 625. The reasons for the rule are set out in detail in 6 Thompson, Real Property (1940), Section 3396, pp. 606-7.

■■ The principle which was announced in New Orleans and Northeastern Railroad Company v. Morrison, supra, was reaffirmed in Jones v. New Orleans and Northeastern Railroad Company, 214 Miss. 804, 59 So. 2d 541, where the rule in Thompson on Real Property, supra, was cited with approval. Thus the Reynolds, by reason of their quitclaim deeds from Mrs. Crawford, obtained no title to the reversionary rights, if any, in the right of way of the Levee Board.

Besides, following the execution to them of deeds in 1935 and 1936, the U. S. Gypsum Company and the Refuge Planting Company and their predecessors in title went into possession of their lands, respectively, on the west and east sides of the levee right of way, and have occupied and claimed the same ever since, more than ten

years prior to the filing of the bill of complaint in this cause on November 23, 1956.

One of the questions in Jones v. New Orleans and Northeastern Railroad Company, supra, was whether abutting landowners, who acquired their title by adverse possession, owned up to the center line of the adjoining railroad right of way. The proof showed that the railroad company had been in possession of its two-hundred-foot right of way and easement and a like strip west of the right of way for seventy years, and that Cecil Travis and others, claimants to the minerals to the center of the right of way as appurtenant to their ownership, and their predecessors in title, had been in adverse possession of the land abutting and adjacent to the right of way for more than thirty-one years. The opinion said that: ''The possession of the same under those circumstances should be extended constructively to the center line on the respective sides of the railroad right of way.'' Ample documentation for this principle appears in the opinion.

Under the present record, if on yesterday the levee had ceased to exist as such and a reversion of interest had thereby occurred, obviously under the foregoing principle, the Refuge Planting Company and U. S. Gypsum Company would have been the beneficiaries.

Appellant relies strongly on Nicholson v. Board of Mississippi Levee Commissioners, 203 Miss. 71, 33 So. 2d 604. In that case it was held that the appellee there, by its eminent domain action, did not obtain the fee to the land but an easement; that the timber thereon was not needed or usable by the Board, and that its removal did not interfere with the performance of the duties and powers of the Commissioners, who refused to permit the removal and instead sold it to other parties; and that the timber, in such circumstances, was the property of Mrs. Nicholson.

Even if the appellant here was in fact the owner, the factual situation is altogether different. Under

Section 232 of the Constitution, the Commissioners have the "supervision of the erection, repair, and maintenance of the levees in their respective districts." The maintenance of the levees is a large rsponsibility. If the policy of the commissioners in reference to maintenance, adopted after long experience, can be ignored, and if each owner of the property adjacent to the levee has the innate right to contract for the maintenance of the levee alongside his property, obviously the successful and economical maintenance thereof could be seriously impaired and even destroyed. The Commissioners had full authority and power to maintain the levees by the selected method, and the appellant had no right whatever to have the contract set aside.

It follows that the decree of the learned chancellor was correct and the cause is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.