BICKHAM, et al. *v.* BATES, et al.

No. 42571          February 25, 1963          150 So. 2d 138

*Joe N. Pigott,* McComb, for appellants.

*J. Gordon Roach,* McComb, for appellees.

KYLE, J.

This case is before us on appeal by F. E. Bickham and others, defendants and cross-complainants in the court below, from a decree of the Chancery Court of Pike County rendered in favor of Mrs. Tennie L. Bates and others, complainants and cross defendants in the court below, confirming the appellees' title to a parcel of land, containing 10.91 acres, situated in the SE¼ of the SE¼ of Section 5, Township 3 North, Range 7 East, as against the appellants, and permanently restraining and enjoining the appellants from trespassing upon the land.

The record shows that the appellees acquired title to the above mentioned parcel of land along with other land from the First National Bank of McComb by warranty deed dated January 16, 1942. The consideration recited in the deed was $1750 paid in cash. The land conveyed to the grantees, M. V. Bates and his wife, is described as follows: The S½ of the SW¼ of Section 4; also 12 acres on the east side of the SE¼ of the SE¼ of Section 5, all in Township 3, Range 7 East, and containing 92 acres more or less, in Pike County, Mississippi. The record shows, and the chancellor found, that the land was under fence when Bates and his wife purchased it; that Bates and his wife entered into possession of the land immediately after acquiring title to the same, and remained in possession thereafter, and

paid the taxes thereon. The record also shows that M. V. Bates died intestate on May 27, 1953, and that he left surviving him as his only heirs-at-law his wife, Mrs. Tennie L. Bates, and four children, all of whom were named as complainants in the bill of complaint filed in this cause.

The complainants filed their bill of complaint on March 31, 1961. In their bill the complainants alleged that they were the owners of the above described 12 acres of land in the SE¼ of the SE¼ of said Section 5, and the complainants deraigned their title thereto as described in the above mentioned deed from the First National Bank of McComb. The complainants alleged that the defendants, F. E. Bickham and his wife, were the owners of land lying in the SE¼ of the SE¼ of Section 5, which joined the land owned by the complainants on the west side; that a fence running northwestwardly from the southeast corner of said Section 5 separated the land owned by the complainants in the SE¼ of the SE¼ from the land owned by the defendants; that the fence had been in existence and in the same location for the last 35 years, during which time the complainants and their predecessors in title had been in continuous, hostile, notorious and exclusive possession of all of that part of the SE¼ of the SE¼ of said section lying immediately east of said fence, and had evidenced their ownership of the land by cutting timber therefrom, by cultivating portions thereof, and by pasturing the same; that during all of that period of time the said fence had been recognized as the property line between their property and the property owned by the defendants; and that it was not until after oil was produced from the 40-acre tract described as the SE¼ of the SE¼ of said Section 5, that the defendants ever attempted to claim any portion of the land owned by the complainants lying east of said fence. The complainants alleged that the land lying on the east side of the above mentioned

fence and which had been occupied and used by the complainants and their predecessors in title for a period of more than 35 years might not be the same identical land as that described in their deed, but regardless of that fact the complainants had acquired a complete legal and equitable title to that part of the 40-acre tract lying east of the above mentioned fence by virtue of Sections 709, 710 and 711, Miss. Code of 1942, Rec.

The complainants further alleged that the defendants had recently gone upon the complainants' land in the SE¼ of the SE¼ of said Section 5 and erected a new fence thereon, and had attempted to remove some of the wire which the complainants had placed upon their fence, and were threatening to commit other trespasses on the land, and that the complainants were entitled to have the defendants restrained and enjoined from further trespassing upon their land and to have their title to all of the land in the SE¼ of the SE¼ of said Section 5 lying on the east side of the above mentioned fence quieted and confirmed as against the defendants. The Complainants asked that upon the final hearing a decree be entered confirming their title to the above mentioned 10.91 acres of land as against the defendants, and that the defendants be required to remove the fence recently erected by them on the complainants' land and be required to replace the wire which the defendants had removed from the complainants' fence; that a surveyor be appointed to make a survey and determine the location of the fences enclosing the complainants' land and a correct description of the land actually owned by the complainants in the SE¼ of the SE¼ of said Section 5. The complainants also asked that damages be awarded to them, both actual and punitive.

The defendants filed their answer to the complainants' bill on August 28, 1961, and with their answer a special demurrer and a cross bill. In their demurrers the defendants challenged the complainants' right to maintain

their bill to confirm title to the parcel of land described in the bill on the ground that the bill showed on its face that the complainants were not in possession of the land at the time the bill was filed. The demurrers were overruled. In their answer and cross bill the defendants deraigned their title or claim of title to the parcel of land in dispute, and denied that the complainants had acquired title to the land by adverse possession, and in their cross bill the defendants asked that the complainants' claim of title be cancelled and that the complainants be enjoined from asserting any claim to the 12-acre parcel of land.

The complainants filed an answer to the cross bill, and the cause was heard at the regular April 1962 term of the court. More than twenty witnesses testified during the hearing. No useful purpose would be served by our undertaking to summarize the testimony of each of the witnesses who testified on behalf of the respective parties.

The testimony offered on behalf of the complainants showed that the parcel of land involved in the controversy and referred to in the complainants' deed as "12 acres" on the east side of the SE¼ of the SE¼ of Section 5 was a triangular plot of land, containing by actual survey 10.91 acres, lying east of the old barbed wire fence referred to in the pleadings, which ran northwestwardly from the southeast corner of said Section 5 to the point of intersection with the north boundary line of the SE¼ of the SE¼ of said Section at a point 750.10 feet west of the northeast corner of the 40-acre tract; that M. V. Bates and his wife, as stated above, acquired title to the "12-acre" parcel of land, along with the 80-acre tract of land lying immediately east of the 12 acres, in 1942; that the 92-acre tract was enclosed by fences at that time, and the fence running northwestwardly from the southeast corner of the SE¼

of the SE¼ of Section 5 was pointed out to them as constituting the western boundary of their property.

The testimony offered on behalf of the complainants also showed that the family dwelling house and other improvements were located on the east 40 acres of the 80-acre tract in the SW¼ of Section 4, which was open land suitable for cultivation, and that the remaining 52 acres of the 92 acres was semi-wild land suitable only for the growing of timber and for pasturage of cattle; that there was a fence separating the cultivatable land from the remaining 52 acres, and the Bates pastured cattle on the 52 acres continuously until the death of Mr. Bates in 1953; that after Mr. Bates' death Mrs. Bates sold the cattle and rented the pasture portion of the 92 acres to her brother-in-law, J. P. Jones, who continued to pasture cattle on the land; and that finally the fence separating the cultivatable land from the uncultivatable land was taken down and the whole of the 92 acres was used for the pasturage of cattle. The testimony shows that the appellees sold timber from the 52 acres of land lying west of the open field in 1943, 1949, 1954, and 1959, and on each occasion the timber was cut up to the barbed wire fence running northwestwardly from the southeast corner of the SE¼ of the SE¼ of Section 5.

J. H. Carraway, who had owned land immediately north of the 12-acre tract since 1947, testified that Mr. and Mrs. Bates had been in possession of the 12-acre tract lying east of the above mentioned barbed wire fence since he moved on the adjoining property in 1947, and that he had observed the cutting of timber on the 12-acre tract four or five times; that the timber was cut for Mrs. Bates; that he had observed cattle owned by Mrs. Bates and Mr. Jones, her brother-in-law, grazing on the land; and that the land had been under fence during that entire time. Carraway stated that there was no fence along the east boundary line of the 12-acre

tract at any time until the spring of 1961, when Mr. Bickham erected the fence referred to in the bill of complaint filed in this cause; and there were no signs of an old fence running along the east side of the 12-acre tract during the time he had been familiar with the property. He knew of no one other than the Bates who had ever cut timber on the 12-acre tract lying south of his land during the 14 years he had known the land.

Other witnesses called to testify on behalf of the complainants testified to the cutting of timber by the Bates and the pasturage of cattle on the land by Mr. Bates during his lifetime and by Mr. Jones, Mrs. Bates' brother-in-law, after Mr. Bates' death. The record also shows that the appellants had been assessed with and had paid taxes on 12 acres off of the east side of the SE¼ of the SE¼ of said Section 5 from the time they purchased the land until the date of the trial, and that during that time the defendants had been assessed with 24½ acres in the northwest corner of the SE¼ of the SE¼ of said Section 5.

The defendants offered testimony to show that they had cut timber on the east side of the above mentioned barbed wire fence in the year 1951, but that testimony was contradicted by testimony offered on behalf of the complainants.

The record shows that there was an overlap in the description of the land described in the deeds under which the defendants claimed title to the 12-acre tract and the description of the land described in the deeds under which the First National Bank of McComb had acquired its title; that the defendants applied for a Federal Land Bank loan in 1935, and the abstracts of title made at that time disclosed the overlap; that a survey was made in connection with the application for the loan, and the description used in the deed of trust under which the loan was finally completed designated the line of the above mentioned fence as the east boundary of

the Bickham property; and that the amount of the loan made by the Federal Land Bank was reduced because of the reduction in the acreage mortgaged to secure the loan. It was admitted that there were no gates or gaps in the barbed wire fence running northwestwardly from the southeast corner of the SE¼ of the SE¼ of said Section 5, which marked the dividing line between the Bickham land in the 40-acre tract and the 12-acre parcel of land to which the Bates claimed title.

At the conclusion of the evidence the chancellor found that the complainants had shown a good and sufficient legal and equitable title to the parcel of land involved in the controversy, and that the complainants were entitled to the relief prayed for. A decree was there upon entered granting the relief prayed for in the complainant's bill.

(Hn 1) The first point argued by the appellants' attorney as ground for reversal of the decree of the lower court is, that the court erred in overruling the defendants' special demurrer to the bill of complaint. The ground alleged for special demurrer was, that in a suit to confirm title it must be shown that the complainants were in possession of the land at the time the bill was filed, and that in this case the bill itself showed that there was an adverse occupancy of the land by the defendants. But we think there is no merit in that contention. The bill plainly stated that the complainants and their predecessors in title ''have been in continuous, hostile, actual, notorious and exclusive possession of all of that portion of the SE¼ of the SE¼ lying immediately east of said fence'' for a period of more than 35 years. The bill further stated that the defendants had recently committed trespasses upon the property, and were threatening to commit other trespasses. The trespasses alleged, in our opinion, did not constitute an ouster, but the trespasses were such as, if repeated and left unchallenged, might in time have resulted in an

ouster. But the unlawful invasion of the complainants' rights was immediately challenged by the complainants' filing of their bill of complaint and an application for an injunction to prevent further trespasses.

(Hn 2) It is next argued that the court erred: (1) In permitting Mrs. Tennie Bates to testify as to the property line pointed out to her by other persons not a party to the suit at the time of the purchase of the land from the bank in 1942; and (2) in permitting K. C. Malsberry to testify that according to general reputation in the community the old wire fence running northwestwardly along the west boundary line of the 12-acre tract was a boundary line fence; and (3) in permitting W. L. Brock, who was engaged in the business of selling real estate in the City of McComb, to testify as to the boundary line of the property pointed out to him at the time he was effecting a sale of the property. It is unnecessary for us to discuss in this opinion the competency of the testimony referred to in the above mentioned assignments of error, for the reason that, if there was error in the admission of the testimony complained of, as to which we express no opinion, it was not such error as would justify a reversal of the decree of the lower court.

(Hn 3) It is next argued that the court erred in overruling the defendants' motion to dismiss the complainants' bill at the conclusion of the complainants' evidence, and, finally, that the decree of the court was contrary to the preponderance of the evidence.

We think there is no merit in either of the contentions last above mentioned. The testimony offered on behalf of the complainants clearly shows, as stated above, that the Bates entered into possession of the parcel of land involved in this controversy in 1942, under color of title by virtue of a deed executed to them by the First National Bank of McComb, and that the Bates remained in possession of the land, claiming it as their own, and ex-

ercised acts of ownership over the land by cutting timber and pasturing cattle on the land, keeping the fences in a proper state of repair and paying taxes on the land for a period of 19 years before the commission of the acts of trespass which precipitated the filing of the complainants' bill in this cause. As stated by the Court in its opinion in Rotenberry v. Arnold, 212 Miss. 564, 55 So. 2d 141, ''The establishment of appellees' title by adverse possession, under such proof, is too obvious to require the citation of authorities.'' The decree of the lower court is therefore affirmed.

Affirmed.

*Lee, P.J., and Arrington, Ethridge and Rodgers, JJ.,* concur.