207 So.2d 604 (1967)
L.G. MOORE, James West and State of Mississippi
v.
Peter T. KULJIS.
No. 44556.
Supreme Court of Mississippi.
November 6, 1967.
Rehearing Denied March 11, 1968.
Further Rehearings Denied March 18, 1968.
*606 J. Ruble Griffin, Bay St. Louis, Thomas J. Wiltz, Walter L. Nixon, Jr., Biloxi, Virgil G. Gillespie, Gulfport, for appellant.
John M. Sekul, Thomas L. Wallace, Biloxi, for appellees.
*607 ETHRIDGE, Chief Justice.
The land involved in this controversy is a small parcel, being the east one-half (30 feet) of that part of Cedar Street in the City of Biloxi, extending from the south side of U.S. Highway 90 several hundred feet to the Gulf of Mexico. Cedar Street runs north and south from Back Bay to the Gulf or Mississippi Sound and is sixty feet wide. This case involves issues concerning the dedication and abandonment of a public street, its extension by artificial filling to the water's edge, and the rule by which owners abutting on a city street have title to its center upon abandonment of the easement.
This suit to confirm title, to cancel claims, and to remove James West from the premises, was brought in the Chancery Court of Harrison County by Peter T. Kuljis against James West, L.G. Moore, the City of Biloxi, the State of Mississippi, and all persons claiming any interest in the land. The chancery court confirmed the title of complainant Kuljis and cancelled the clouds asserted by the defendants. It awarded Kuljis a judgment against West for rent at the rate of $200 per month, following the expiration in 1962 of his lease. The State, Moore and West appealed, the latter with supersedeas. Kuljis cross-appealed, seeking double rent. We affirm.

I.
The land in question was patented out of the Federal government in 1844. It is in the Point Cadet section of Biloxi, where the seafood canning factories are located. In 1845, the patentee, McCaleb, had a large tract of land surveyed into lots, blocks, streets and alleys. This survey was known as the Plan of Summerville, and among the streets so platted and designated was Cedar Street. This plat shows no land, but only a beach at the foot of Cedar Street. In 1897 the entire area was resurveyed by Ferguson. On that plat Cedar Street was again shown and dedicated as a street running north and south, sixty feet wide, bounded on the east by Block 4, and on the west by Block 3 of the Plan of Summerville. Both of these plats show Cedar Street running from the seashore of the Gulf on the south to the marsh on the Bay of Biloxi to the north.
Lot 1, Block 4 of the Plan of Summerville is on the east side of Cedar Street. Valid record title to it became vested in 1932 in Kati Mladinich. In 1934 she obtained a state patent, conveying to her all of that land which lay south of Lot 1, Block 4, east of Cedar Street, if extended. All of the deeds to Lot 1, Block 4 in this chain of title describe Lot 1, Square 4 as being bounded on the west by Cedar Street, and on the south by the Gulf of Mexico or Mississippi Sound. The same type of description was used as to Lot 6, Block 3, which adjoins Cedar Street on the west. These two plats (the 1845 Plan of Summerville and the 1897 Ferguson Resurvey) dedicated Cedar Street throughout its entire length and width to the public use.
Up to the early 1900's the mean high tide of the Gulf reached within several feet of the south side of a street car line, which was constructed adjacent to the south side of Front Street. Sometime between 1936 and 1943 the Federal Government, in co-operation with the City of Biloxi, dredged and pumped on the south end of Cedar Street, as well as on other land in that area, several hundred feet of artificial accretion. Some of this accretion perhaps resulted from oyster shucking activities, but most of it was artificial accretion made by the Federal Government south of the original high water mark. During this time the property to the east, Lot 1, Block 4, was owned by Mrs. Mladinich, whose family operated a canning factory, packing shrimp and oysters.
In 1943 Mladinich conveyed to Leckich and Williams a parcel of land lying immediately south of Lot 1, Block 4, in the Plan of Summerville. This was described as beginning at a point where the western boundary line of Lot 1, Block 4 intersects *608 the original high water mark of the Mississippi Sound; running south a distance of 900 feet, then east a distance of 80 feet, then north 900 feet to a point where the eastern boundary line of Lot 1, Block 4 intersects the original or natural high water mark of the Mississippi Sound, thence in a westerly direction 80 feet to the place of beginning.
In 1944 Mladinich quitclaimed to Leckich and Williams a frontage of 80 feet on the south side of East Beach Boulevard, bounded on the north by the boulevard, on the east by property owned by a named individual, on the south by the Gulf, and "on the west by Cedar Street." By 1946 the land south of the road, bounded on the west by Cedar Street, became vested in Williams and Thornton. Williams and Leckich, and later Williams and Thornton, operated a seafood plant on the land purchased from Mladinich, and on the land in dispute (the 30-foot tract, the East half of Cedar Street extended), which business was known as the Victory Packing Company. In the 1947 hurricane, some of the buildings were destroyed; afterwards other buildings were constructed, some of them extending over on the land here in controversy.
On February 14, 1958, Williams and Thornton conveyed to Stephen J. Kuljis and Peter T. Kuljis the following parcel of land:
* * * the following described real property, lying and being situated in the City of Biloxi, County of Harrison, State of Mississippi, to-wit:
THAT CERTAIN LOT OR PARCEL OF LAND fronting eighty (80) feet on the South side of Old East Beach Boulevard, as formerly constituted and running back South between parallel lines to the Mississippi Sound; East by now or formerly Wentzell, North by South line of Old East Beach Boulevard, and on the West by the East line of Cedar Street, extended South of Beach Boulevard to the Mississippi Sound, or Gulf of Mexico, and being that part of the land purchased by Ernest Mladnich from the First National Bank of Biloxi, Mississippi, by deed dated December 3, 1931, and recorded in Book 192, pages 423-424, of the Land Deed Records of Harrison County, Mississippi, which lies South of Old Beach Boulevard, as formerly constituted, and being conveyed together with all improvements thereon, and together with all riparian, littoral or aquatic rights thereunto belonging; together with capping machines conveyors, tanks and other appurtenances to the factory building situated on said premises, and together with office building fixtures and equipment therein.
This conveyance is made subject to any rights of the lessee or successors in interest under lease from grantors to Hollis West, covering the period of five (5) years from the date of August 11, 1957, and covering on a portion of the above described property.
In brief, this deed to Kuljis conveyed this lot as bounded "on the west by the east line of Cedar Street, extended south of Beach Boulevard to the Mississippi Sound, or Gulf of Mexico. * * *" It was also subject to the rights of the lessee, Hollis West, from lessors Williams and Thornton. That five-year lease ran from August 11, 1957 until August 10, 1962.
Stephen J. Kuljis died, and Peter T. Kuljis obtained title to his brother's interest from the administratrix of the estate in July 1961. James West succeeded to his brother's interest in the lease and in the seafood business which was operated by Hollis West during his lifetime and located in part on the land here in question.
After the Kuljis brothers bought the land in 1958, they continued to operate the seafood factory located on it and on the tract in dispute.
Before the 1947 hurricane there were buildings in the center of Cedar Street, if extended, directly south of Front Street. Some of these buildings of the Victory *609 Packing Company extended over from the Mladinich land into the east half of Cedar Street, if extended. A seafood factory was operated on the disputed land from a time before the 1947 hurricane up until this suit was filed. The Attebury Survey reflects that there was situated on Cedar Street, if extended, at its north end below the highway, an office building, and moving toward the south, a warehouse, a cold storage room, an oyster shucking room, a timber wharf, and part of a shrimp picking room with a concrete platform to the west. These buildings and structures were placed on the land in late 1947 or early 1948, after the hurricane of September 19, 1947.
On February 14, 1958, as stated above, Williams and Thornton conveyed to Kuljis the 80-foot wide lot on the south side of the highway, bounded "on the west by the east line of Cedar Street, extended south of Beach Boulevard to the Mississippi Sound, or Gulf of Mexico." This deed also conveyed to Kuljis "capping machines, conveyors, tanks and other appurtenances to the factory building situated on said premises, and together with office buildings, fixtures, and equipment therein." It was subject to any of the rights of lessee, Hollis West, under the five-year lease of 1957. Hollis West and his successor, the appellant James West, continued to pay rent under this lease to Kuljis, after the latter purchased in 1958 the tract as described above, through the expiration date of the lease in 1962.

II.

JAMES WEST
Four and one-half years after Kuljis purchased the land to the east of Cedar Street, as extended, from Williams and Thornton, and after the lease under which he had been holding expired, James West obtained in 1962 from Williams and Thornton a quitclaim deed, by which the grantors purported to convey any right, title or interest which they had in and to the 60-foot width of Cedar Street as extended south of Highway 90 to the Mississippi Sound; and also to convey all of their interest individually or as a partnership of Victory Packing Company to the land, and the personal property, equipment and fixtures thereon. The deed stated:
It is expressly understood that the grantors herein do not warrant that they have title to any of the above property, but it is the intention of this instrument to quitclaim to grantee any interest which they may have in and to any of the above described real or personal property.
The claim of West is based on this 1962 quitclaim deed to him from Williams and Thornton.
The chancery court held that the two plats had the effect of dedicating an easement to the City of Biloxi for Cedar Street to the water's edge. The city abandoned this easement, by condoning its long, open and notorious use, and by allowing various individuals to erect and maintain buildings and other improvements on the land over a long number of years clearly adverse to its use as an easement for street purposes. Title to the extension of Cedar Street "upon such abandonment by the municipality, reverted to the respective abutting landowners on the east and west thereof to the center line of the said extension" of Cedar Street. The position of James West was that of a tenant holding over after expiration of the term of his lease. By virtue of the lease, West first recognized Williams and Thornton, doing business as Victory Packing Company, as owners of the land and his landlord. Following the sale to Kuljis of the land abutting on the east, West recognized Kuljis as owner and landlord, by paying the rent to him. "This conclusion is inescapable, West's testimony to the contrary notwithstanding." Further, the chancery court held that Williams and Thornton intended to and did convey to Kuljis by the 1958 deed all of their interest in the subject land. This was further evidenced by the assignment to Kuljis of the lease. When Williams and Thornton executed *610 their 1962 deed to West, they had already divested themselves of their interest in the subject land. Hence West acquired nothing by the deed to him. For these reasons, the court said, West was in the position of a tenant holding over after expiration of his lease, insofar as the east 30 feet of Cedar Street extended was concerned. We agree with these conclusions.
The first Skrmetta case dealt with the extension of Oak Street to the Gulf, also in the Summerville Plan of Biloxi. The chancery court sustained a motion to exclude complainant's evidence. He claimed title to the center line of Oak Street to the Gulf, south of East Beach Street. Upholding his contentions on the pleadings, the case was reversed and remanded for a trial on the merits, with the City to be made a party defendant. Skrmetta v. Moore, 202 Miss. 585, 30 So.2d 53 (1947). The opinion discussed at length several rules directly applicable to decision of the instant case. On new trial, the chancery court's decree that the City had not abandoned the extension of Oak Street was affirmed. Skrmetta v. Moore, 227 Miss. 119, 86 So.2d 46 (1956).
The dedication and de facto acceptance of Cedar Street as extended to the Gulf is established. Cedar Street north of the highway has been actually accepted and improved as a city street for a width of sixty feet for many years. This was sufficient to extend acceptance to the Gulf. Skrmetta v. Moore, 202 Miss. at 599, 30 So.2d at 56.
West as well as Kuljis is estopped to deny that there is such a street, and that the land conveyed extended to the Gulf. The quitclaim deed to West in 1962, and the deeds to his purported predecessors in title refer to Cedar Street. The conveyance to Williams and Thornton and their predecessors, pertaining to the tract east of Cedar Street as extended, bounded the property on the street, and they and their successors are estopped to deny its existence and that the land extended to the Gulf. Skrmetta v. Moore, 202 Miss. at 598, 30 So.2d at 56.
Further, first Skrmetta held:
The original patentee and his heirs being estopped to deny that there was such a street or way as Oak Street and this a boundary street all as aforesaid, the conclusion follows that, in and by the original plat or survey and the conveyances made by reference to it, the original patentee had made a dedication of that street throughout its entire length and width to the public use and when he so sold the lots the purchasers acquired the fee of the abutting streets to the center thereof, subject to the dominant use thereof by the public for street purposes. (202 Miss. at 598-599, 30 So.2d at 56.)
Moreover, in the absence of an intent to the contrary sufficiently appearing, a deed which refers to or describes the land as bounded on a street carries title to the center line of the supposed street, despite the fact that there has been a nonuser of the street or its extension. Annot., 49 A.L.R.2d 982, 1001, 1010 (1956).
Furthermore, a street or public highway leading to navigable waters, such as Cedar Street, will keep pace with the extension of the land by artificial filling. Frater v. Baylen Street Wharf Co., 57 Fla. 63, 49 So. 188 (1909); Hoboken Land & Improvement Co. v. Mayor, etc., of City of Hoboken, 36 N.J.L. 540 (1873); Mayor, etc., of Jersey City v. Morris Canal & Banking Co., 12 N.J. Eq. 547 (1859); Horgan v. Town Council of Jamestown, 32 R.I. 528, 80 A. 271 (1911); Annot., 91 A.L.R.2d 884 (1963).
Analogous to this rule is Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962), where it was held that land, created by the county by filling in shallow bottom lands on the Gulf of Mexico below original mean high tide, in connection with construction of a beach and seawall, belonged to the owner of the upland in fee simple. The filled area, added to the land of the upland owner by artificial accretion *611 made by a stranger, accrued to the upland owner. Thus the dedicated Cedar Street, leading to the Mississippi Sound, was extended as a street to the water after the area below its terminus was filled in by the Federal Government.
The chancery court was warranted in finding that the city had abandoned the extension of Cedar Street below the highway. This may be done by unequivocal acts showing a clear intent to abandon, destruction of the easement, and the impossibility of its legitimate use as a street. Skrmetta v. Moore, 227 Miss. 119, 86 So.2d 46 (1956). The general rule of construction that a conveyance of land which abuts on a street carries title to its center line, in the absence of a sufficient indication of contrary intention, "ordinarily applies notwithstanding the highway was vacated prior to the conveyance." Annot., 49 A.L.R.2d 982, 1002-1003 (1956).
In short, there was a dedication of Cedar Street as extended to the Gulf, and its extension kept pace with the extension of the land by artificial filling. Since prior conveyances in the chain of title bounded it on the south by the Gulf, Kuljis and West are estopped to deny that the land conveyed extended to the Gulf. And the rule of construction that a conveyance of land abutting on a street carries to its center line, absent a sufficient indication of contrary intent, applies, even assuming arguendo that the street was abandoned prior to the 1958 conveyance to Kuljis.
Moreover, if it is assumed that the abandonment occurred prior to the 1943 deed of Mladinich to Leckich and Williams, and that, despite the general rule, title to the 30-foot tract after abandonment was not transferred, the heirs of Mladinich would have retained title to it. In 1963 they conveyed to Kuljis their interest in the east 30 feet of Cedar Street extended.
However, West argues that these established rules do not apply to the 1958 deed from Williams and Thornton to Kuljis; and that its description conveyed only a lot fronting 80 feet on the south side of the highway and bounded "on the west by the east line of Cedar Street, extended south" to the Gulf. We do not think these factors change the result in the instant case, particularly in view of the decision in first Skrmetta, which is in accord with the present weight as well as trend of authority. The opinion as well as the original record in first Skrmetta reflect that the court there was dealing with deeds substantially similar to the 1958 conveyance to Kuljis.
To the same effect is Reynolds v. Refuge Planting Company, 231 Miss. 585, 97 So.2d 101 (1957), where the company purchased land next to a levee, described as "east of the levee line." Reynolds later purchased by quitclaim deed from the company's grantor the strip used for the levee. Observing that "the contention is ingenious," the court rejected it, and held that the owner on each side of the levee strip owned the fee to the center, subject to the levee easement.
The pertinent rule, adopted in these Mississippi cases; is summarized in 12 Am.Jur.2d Boundaries section 52 (1964):
The principal area of conflict found among the boundary cases involving conveyances of lands abutting on highways is that which concerns the effect of a description in terms which precisely place the boundary of the premises at the inner side line of the highway, street, or alley. The view which is gaining ground, and which may be said to represent the trend of authority so far as the later cases are concerned, is that a specification of the inner side line of the street or highway as the boundary is not in itself sufficient to overcome the general rule which includes title to the center line.
To the same effect, see Annot., 49 A.L.R.2d 982, 1023 (1956).
The rule that the description runs to the center of the adjoining street is a rule of conveyance, not a mere presumption *612 rebuttable by parol evidence of grantor's intent. The fee under an adjacent street can easily be excluded by express words so stating. In the instant case, the chancery court was amply warranted in concluding, from the terms of the 1958 deed to Kuljis, that the grantors intended to convey the described tract and the fee to the center of Cedar Street as extended.
Another important factor pertains to the practical construction of the parties concerning the effect of the 1958 deed to Kuljis. This rule has been applied in several cases in this jurisdiction. Sumter Lumber Company v. Skipper, 183 Miss. 595, 608, 184 So. 296, 298-299 (1938), states:
(W)hen the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words.
McCuiston v. Blaylock, 215 Miss. 504, 61 So.2d 332 (1952); Richardson v. Moore, 198 Miss. 741, 22 So.2d 494 (1945). In the instant case, after Thornton and Williams conveyed the described tract to Kuljis, subject to the lease to West, he began paying rent to Kuljis, and continued this for four years, until the lease expired. The property rented consisted in part of the east 30 feet of Cedar Street extended. The chancellor expressly rejected West's version of the reason for his payment of rent to Kuljis, and emphasized this practical construction of the parties. Assuming there is ambiguity in the deed as to the intent of the parties or its legal effect, this contemporaneous construction of it by West, evidenced by his actions in paying rent to the grantee as his landlord, is of considerable significance.
Finally, some of the judges are of the opinion that, in addition to the above stated factors, West is estopped to deny the title of Kuljis. He obtained his quitclaim deed from Williams and Thornton after holding under a five-year lease, and when he was holding over after termination of that lease. The limitations on this doctrine are recognized, but Simpson v. Ricketts, 185 Miss. 280, 186 So. 318 (1939), supports this conclusion, under the particular facts of this case.

III.
Four and one-half months after conclusion of the trial, West filed a motion to dismiss the bill of complaint and the cross-bill of Moore, on the ground that West occupied the land adversely to the claims of both Kuljis and Moore, and that both the bill and cross-bill were to confirm title, and neither was for the purpose of cancelling a cloud. The statute provides that an owner out of possession, if there is no adverse occupancy, may file a bill in chancery court to have his title confirmed and quieted. Miss.Code 1942 Ann. § 1323 (1956). So generally a suit to confirm may not be brought if there is a party defendant in possession of the land. Griffith, Mississippi Chancery Practice § 217 (2d ed. 1950).
The chancery court overruled the motion to dismiss the cross-bill; it was a suit to remove clouds from title and defendant's possession did not bar such a suit. It stated that, since it had overruled that motion, it would proceed to decide all issues in the suit, in order to do complete justice. The court further held that West was merely in the position of a tenant holding over. Sustaining the motion to dismiss the original bill would not settle the ultimate issues. It would only put Kuljis to the delay and expense of first ousting West in another action.
Furthermore, the bill of Kuljis contained not only a prayer for confirmation of title, but also to cancel the claims of Moore, West and the State, and to issue an injunction removing West from the premises. This was not a simple bill to confirm title. For all of these reasons, West's motion to dismiss the Kuljis bill and Moore's cross-bill was properly overruled. *613 Bickham v. Bates, 246 Miss. 171, 150 So.2d 138 (1963).
The final decree gave Kuljis a judgment against West in the amount of $9,600, being rental on the property from and after August 14, 1962 (expiration date of lease), at the rate of $200 a month through September 1, 1966 (the day before opinion of the court). It directed the previously appointed receiver to pay to Kuljis the money received by him as rental less his fee; and ordered West to remove himself and his property from the land within 60 days. West would continue to pay rent to the receiver at the rate of $150 a month until his removal. West appealed with supersedeas.
Although the Attebury Plat shows that some of the buildings on Cedar Street extended lie partly on the east side and partly on the west, they were constructed by Williams and Thornton when they owned the property to the east, with possibly one or two exceptions constructed by West. Williams and Thornton conveyed to Kuljis the land "together with all improvements thereon, * * * together with capping machines, conveyors, tanks and other appurtenances to the factory building situated on said premises, and together with office building, fixtures, and equipment therein." The lease under which West was holding provided for a monthly rental of $200. In view of that fact and related circumstances, we cannot say that the chancellor erred in requiring West to pay rent for holding over after termination of his lease in the same amount which he had agreed to pay as rent. Moreover, he reduced the rent to $150 a month from date of the decree to vacation of the premises.
Kuljis cross-appealed from that part of the decree pertaining to rent. He asserts that the statute required the trial court to award him double rent. Miss. Code 1942 Ann. § 947 (1956). Section 947 provides that after notice and refusal to surrender, the tenant "shall, in either case, thenceforward pay to the landlord double the rent which he should otherwise have paid." This statute is penal in nature. Burr v. Johnson, 204 Miss. 479, 486, 37 So.2d 747, 748 (1948), suggestion of error overruled, 38 So.2d 314 (1949); Stovall v. Gardner, 203 Miss. 527, 531-532, 36 So.2d 163, 164-165 (1948). Moreover, in order for a landlord to recover under a statute imposing multiple damages for tenants holding over, the holding over must have been wilful and without color of title. If it is under a bona fide claim of right, based on apparently reasonable grounds, he cannot be held liable for the penalty. 32 Am. Jur. Landlord and Tenant § 934 (1941). Since double rent is a penalty, and West had some apparently tenable basis for holding over, the chancellor was correct in refusing to impose double rent. Hence the cross-appeal of Kuljis has no merit.

IV.

L.G. MOORE
L.G. Moore, a defendant, filed a cross-bill against all other parties seeking to cancel their claims as clouds on his title. He claimed under several deeds to him and by adverse possession. The chancery court correctly held that Moore had no effective record title, and that he had failed to prove title by adverse possession, since he failed to show continuous and notorious adverse possession.
Moore has no valid chain of record title. He possessed only a scattered gathering of irrelevant quitclaim deeds. He admitted that his first claim to the property was in 1944, when he bought from Everett an old house on the land, the back part of which was on piling above the mean high tide. The deed covered only the building. He also obtained a few quitclaim deeds from some of the heirs of Ott and McCaleb, who originally patented Summerville in 1844. None of these had the effect of conveying to him any record title.
Finally, he asserts record title by a 1951 tax deed from the City of Biloxi. *614 On cross-examination, he admitted that he was advised to have the property assessed in the name of his wife, to refrain from paying taxes in 1948, and to allow the property to be sold to the city for delinquent taxes in 1949. In 1951 he purchased this property from the city. In short, although neither Moore nor his wife had any vestige of title, he permitted the property to be assessed in her name, and sold for taxes under a tax-sale scheme by which he could obtain a deed from the city. He cannot be allowed to strengthen his claim when he has it asssessed in this manner and the property is sold as a consequence of his wilful omission to pay taxes. His purchase would merely operate as a payment of taxes, and the title will be the same as it was before the sale. Howell v. Shannon, 80 Miss. 598, 31 So. 965 (1902); Robinson v. Lewis, 68 Miss. 69, 8 So. 258 (1890); 51 Am.Jur. Taxation § 1054 (1944).
As to Moore's possessory claim, the great weight of the evidence supports the finding of the trial court that he failed to show continuous, open and notorious adverse possession for more than ten years.

V.

STATE OF MISSISSIPPI
The State of Mississippi was made a party to this suit, and filed an answer but no cross-bill. It asserted that artificial and natural accretions to the land did not deprive the State of its title; and that at the times of the Summerville and Ferguson plats and subsequently, most of the land involved was submerged or bottom lands, which the State held as trustee for the public. The State's answer failed to reply to the detailed allegations of the original bill of complaint. Generally, where averments of fact are not denied by the answer, they are taken as admitted. Griffith, Mississippi Chancery Practice § 350 (2d ed. 1950). Moreover, the State took no part in the trial except to file a brief; it offered no witnesses, and asked for no relief.
The chancery court held that the subject land was susceptible of private ownership, under the two Skrmetta cases and the Guice case. Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962); Skrmetta v. Moore, 227 Miss. 119, 86 So.2d 46 (1956); Skrmetta v. Moore, 202 Miss. 585, 30 So.2d 53 (1947). It further observed that no rule otherwise would have disastrous consequences by disturbing innumerable titles on the coast, many of which have been developed and occupied over a period of many years at great cost.
Furthermore, when Summerville was platted, reflecting Cedar Street to the Gulf, the title to the east half of that street, subject to the easement of the street, was vested in the adjacent landowner. That owner and his successors became the owner in fee simple of the area added to the land, by what may be called accretion due to artificial conditions made by a stranger. Guice expressly held to this effect, and that rule is applicable here.
In summary of this decision, the case is affirmed on direct appeals, and on the cross-appeal of Kuljis seeking double rent. It will be necessary for the chancery court to determine the amount of rent owed by West to Kuljis to the date West vacates the premises, and for the receiver to account and to be discharged. For those purposes only, the cause is remanded to the chancery court.
Affirmed on direct and cross-appeals, and remanded for limited purposes.
RODGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.

ON PETITION FOR REHEARING (FORMERLY SUGGESTION OF ERROR)
PATTERSON, Justice:
I concur with the majority of the Court that the petition for rehearing should be denied. It is my opinion, however, that the *615 Court reached the right result in this suit, but by erroneous reasons.
At the outset it is my opinion that the motion of the defendant West to dismiss the bill of complaint for confirmation of title, since it shows on its face and by evidence that the complainant was not in possession of the property or that the complainant was out of possession and there was no adverse occupancy, is not well taken for the reason set forth in Hume v. Inglis, 154 Miss. 481, 485, 122 So. 535, 536 (1929), wherein it is stated:
A bill to confirm title can be maintained as such only when there is no adverse occupancy of the land. Section 549, Code of 1906 (section 321, Hemingway's 1927 Code). When the land is adversely occupied, as is the case here, the most that such a bill can be  but it may be that much  is one to cancel clouds, under which latter bill only named defendants can be made parties. It is not allowable under a bill to cancel clouds and, when there is adverse occupancy, to make unknown parties defendants, as may be done in a general bill to confirm. There was, therefore, no jurisdiction in this case of unknown defendants, and that portion of the decree attempting to adjudicate the title as against unknown parties is void, and must be reversed finally and vacated. * * *
It is my opinion in view of the above that the decree of the chancellor which confirms title as against anyone other than the named defendants is erroneous. West, however, is a named defendant and it would be applicable to him.
The majority opinion correctly relates the facts necessary to this opinion. From it and some of the record it is evident that many years ago Cedar Street, its northern terminus being the Bay of Biloxi and its southern terminus being the Gulf of Mexico, was dedicated to the public. Cedar Street north of present U.S. Highway 90 is presently in use as a thoroughfare in the city of Biloxi and has been for many years. The area in controversy, south of U.S. Highway 90, has never been used as a street or thoroughfare as it was partially beneath the surface of the Gulf of Mexico until the mid-1930's, and additionally, there was a building constructed upon the area immediately south of Cedar Street, if it had been extended across what is now U.S. Highway 90, which would have thwarted its purpose as a street.
In 1931 Ernest Mladinich obtained a deed from the First National Bank of Biloxi to the following described land:
That certain lot or parcel of land bounded on the north by the property now or formerly of Moulet, on the east by the property of Wentzell, on the south by the Gulf of Mexico, and on the west by Cedar Street, measuring eighty (80) feet east and west, and two hundred and ninety (290) feet, more or less, north and south; together with all riparian rights and all buildings located thereon or thereto belonging.
In 1934 Kate Mladinich received a patent from the State of Mississippi which described the land as follows:
Beginning at a point where the Western boundary line of Lot One (1) Block Four (4) Plan of Summerville, City of Biloxi, Mississippi (as of record in the office of the Chancery Clerk of Harrison County, Mississippi) extended intersects the original or natural high-water mark of Mississippi Sound; running thence in a Southerly direction on a line in continuation of said Western Boundary line of said Lot 1 Block 4, a distance of 900 feet, more or less to a stake; thence Easterly a distance of 80 feet to a stake; thence in a Northerly direction, on a line parallel with an extension of said Western boundary line of said Lot 1 Block 4, Plan of Summerville (said line being an extension of the Western boundary line of Lot 1 Block 4 Plan of Summerville) a distance of 900 feet, more or less, to a stake at a point where the said Eastern boundary line of said Lot 1, Block 4, Plan *616 of Summerville intersects the original or natural high-water mark of Mississippi Sound; thence in a general Westernly direction, along the meanderings of said natural or original high-water mark, a distance of 80 feet to the place of beginning.
Without reference to the validity or invalidity of the patent, both its description and the description from the deed by the bank to Ernest Mladinich placed the western boundary of the property conveyed adjacent to or abutting Cedar Street if it had been extended south of East Beach Drive, now U.S. Highway 90. The Mladiniches by these instruments thereby became the owners of a parcel of land 80 feet in width east and west and 290 feet, more or less, north and south, bounded on the north by the property of Moulet, on the east by the property of Wentzell, and on the south by the Gulf of Mexico. The record discloses, with reference to the exhibits, that East Beach Drive lies between the property described and the Moulet property on the north, but that the Wentzell property adjoins it immediately to the east. It is thus apparent, by the calls of the deeds, that the western line of this property would coincide with and abut the eastern edge of Cedar Street had it in fact been extended southward to the Gulf of Mexico. The 290-foot, more or less, buildup by accretion south of East Beach Drive, and which is mentioned in the 1931 deed from the bank to Mladinich, was the first appreciable enhancement of the area to the south. It was never used by the city as a street and was abandoned simultaneously with its accretion. Though nonuser of a street by a municipality does not work a reverter thereof or an abandonment, this Court held in Skrmetta v. Moore, 227 Miss. 119, 130-131, 86 So.2d 46, 48 (1956), by citing from Briel v. City of Natchez, 48 Miss. 423 (1873), the following rule:
"A city, to whose public use property has been devoted by the owner, should not by nonuser, even if continued for years, be held to have relinquished or abandoned the easement. To deprive the public of it there must be such open, notorious and continued individual use of the property to give notice of adverse occupation and use." (Emphasis added.)
It is the opinion of the writer that the construction and maintenance of a building immediately south of East Beach Drive and upon Cedar Street if it had been extended, prior to World War I and maintained until its destruction in 1947 or thereabouts, was such open, notorious, and continued individual use of the property to give notice of adverse occupancy so as to signify its abandonment by the city. The buildup by accretion of the property immediately west of that described by deed to the Mladiniches, being a portion of the property in question, without doubt occurred at the same time as the buildup to their own property. Upon its abandonment by the city the title thereto by operation of law vested in the Mladiniches who were the abutting owners. They thereby became the owners of an area 110 feet east and west (80 feet by deed  30 feet by abandonment of the street), bounded on the north by U.S. Highway 90, on the south by the Gulf of Mexico, on the east by the property now or formerly of Wentzell, and on the west by the center line of abandoned Cedar Street. The major southerly buildup thereafter by accretion accrued to the benefit of these individual owners. In Harrison County v. Guice, 244 Miss. 95, 140 So.2d 838 (1962), we held that lands created by accretion, either artificial or natural, inure to the benefit of the upland owner so that he might have continued access to the water. At this time the rule of law which had extended the western boundary of the Mladinich's land had expended itself and was no longer applicable, as the question of abandonment had been removed. See White v. Jefferson, 110 Minn. 276, 284, 124 N.W. 373, 375 (1910), wherein the Court made the following statements in regard to an abandoned street:
* * * On vacation of a street in a case like the one at bar, he owns lots 23 and 24 and the space between in fee simple. *617 He can transfer the whole tract, or any part of it, or transfer lot 23 to any person, and lot 24 to another person, and the space between the two to a third person. It is immaterial in what order of time such transfers were made. If the strip was granted before the lots, the intention would be certain; if afterwards, equally clear. What had been a street would be mere land. It would be taxable as land and so descend. Its transfer would be subject to the appropriate section of the statute of frauds. That it was not numbered nor properly named on the plat would be wholly insignificant. The case would be the same as if no street had ever existed, and, instead of being designated as "street," the tract had been marked "sand hole," or "mound," or any other name, or had had no name. The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement. There is neither mystery nor magic in the word "street." The easement of use is the significant fact. When the easement ceases, there is no occasion nor justification for any imputation of intention. (Emphasis added.)
The former street reverted to mere land and was subject to being conveyed either in whole, part, or parcel by normal descriptive phrases as used in usual instruments of conveyance, which could include, of course, a call or terminology referring to Cedar Street as a descriptive point without rejuvenating or giving rebirth to the abandoned street.
Thereafter, by some several deeds, all of which contained a specific width of 80 feet east and west, the property, exclusive of the 30-foot strip formerly part of the abandoned street was ultimately vested in Thornton and Williams; that is, they obtained title to an 80-foot strip of land east and west, bounded on the north by U.S. Highway 90, formerly East Beach Drive, which extended south between parallel lines to the Gulf of Mexico. The land immediately west of that conveyed to Thornton and Williams, the 30-foot strip, being the eastern abandoned portion of Cedar Street, remained vested in the Mladiniches as it was not conveyed by them to Thornton and Williams and neither did they gain title thereto by adverse possession although the complainants alleged that they so possessed it, which was admitted by West and by Moore, the latter, however, alleging that the occupancy and use of the land was by their permission. The chancellor made no specific finding as to adverse possession by Thornton and Williams, but did find that the possession of Moore was indefinite and noncontinuous. He based his finding for Kuljis on the construction of a deed from Thornton and Williams rather than adverse possession. From this we conclude title was not vested in Thornton and Williams by adverse possession.
When Thornton and Williams conveyed to Stephen and Peter Kuljis, they conveyed only that described in their deed as a lot 80 feet east and west, the description being as follows:
That Certain Lot or Parcel of Land fronting eighty (80) feet on the South side of Old East Beach Boulevard, as formerly constituted and running back South between parallel lines to the Mississippi Sound; East by now or formerly Wentzell, North by South line of Old East Beach Boulevard, and on the West by the East line of Cedar Street, extended South of Beach Boulevard to the Mississippi Sound, or Gulf of Mexico, and being that part of the land purchased by Ernest Mladnich from the First National Bank of Biloxi, Mississippi, by deed dated December 3, 1961, and recorded in Book 192, page 423-424, of the Land Deed Records of Harrison County, Mississippi, which lies South of Old Beach Boulevard, as formerly constituted, and being conveyed together with all improvements thereon, and together with all riparian, littoral or aquatic rights thereunto belonging; together with capping machines conveyors, *618 tanks and other appurtenances to the factory building situated on said premises, and together with office building fixtures and equipment therein. [See diagram]

As mentioned, the title to the land immediately west of that conveyed remained in the Mladiniches or their heirs. The quit claim deed from Thornton and Williams thereafter was ineffectual to vest title in West, as they had no title to convey. The subsequent deed by the heirs of Mladinich to Kuljis, the appellee, vested him with the better title.
For the above reasons it is my opinion that the court below and the majority here reached the right conclusion, but by erroneous *619 reasoning, as it is the opinion of the writer that Skrmetta v. Moore, 202 Miss. 585, 30 So.2d 53 (1947), upon which the majority relies, is not authority to estop West or Kuljis to deny the existence of Cedar Street at the time they became involved with the property. Neither is it my opinion that this Court can assume an ambiguity in a deed (the 1958 deed of Thornton and Williams to Kuljis) so that a practical construction may be given to it when in fact the deed is definitive and certain, as is the reference therein to a former deed, as this violates a cardinal rule of the construction of instruments. "A deed which is ambiguous or uncertain may be made definite and certain by the practical construction of the parties to it while in interest." (Emphasis added.) 23 Am.Jur.2d Deeds, section 171 (1965). See also to the same effect Berry v. Luckett, 248 Miss. 99, 158 So.2d 706 (1963); Williams v. Chaney, 236 Miss. 702, 112 So.2d 809 (1959); McCuiston v. Blaylock, 215 Miss. 504, 61 So.2d 332 (1952); Richardson v. Moore, 198 Miss. 741, 22 So.2d 494 (1945); and Sumter Lumber Company v. Skipper, 183 Miss. 595, 184 So. 296, 835 (1938). See also Dunn v. Stratton, 160 Miss. 1, 133 So. 140 (1931), as to the rules of construction used by this Court in determining the intent of the parties to deeds, one of which is, "those parts which are the more certain and dependable as descriptive items will interpret those items which are the less certain and dependable, and, when it is necessary in order to satisfy and harmonize all items, the more certain will, if reasonably possible, draw to themselves those that are the less certain * * *" 160 Miss. at 7, 133 So. at 142. I conclude from this that 80 feet east and west is mathematically certain and that the artificial extension of a known line is certain, and that these absolutes are not susceptible to change by legal construction, as they leave no room for ambiguity.
The majority cites Simpson v. Ricketts, 185 Miss. 280, 186 So. 318 (1939), as authority for an estoppel on the part of the defendant West to deny the title of Kuljis, his former landlord. It is my opinion this case is not applicable to the case at bar for the reason that the former landlord is asserting his title against the tenant. Without belaboring the point, the case is simply not applicable to the facts. The majority rule is stated in 32 Am.Jur. Landlord and Tenant section 125 (1941), as follows:
* * * It seems now to be well settled, although the rule is of comparatively recent origin, that the doctrine of estoppel against the tenant does not apply where the landlord prosecutes a suit against the tenant, tendering an issue of title and seeking a judgment which will preclude the tenant either as to the title in fee or * * *. Even though an issue as to possession is also tendered by the landlord, it is held that the estoppel may not be invoked to prevent the lessee from showing his own title, irrespective of whether he has surrendered possession * * *.
I concur with the majority of the Court in the result reached in this suit. I concur in the reasoning and results as to the defendants other than West. It is my opinion, however, that the majority's reasoning in law as to the defendant West is erroneous though it is my opinion that it concluded with the proper result.
Petition for rehearing denied.
All Justices concur in the result except GILLESPIE, P.J., who took no part.