GRIFFIN, Justice, for the Court:
This is a land line dispute. We are of the opinion that the evidence supports the findings of the chancellor, and in view of our usual degree of deference to the findings, we will not disturb on appeal. To say the least, he was not manifestly wrong. Thompson G. Daniel v. The Snowdown Association, 513 So.2d 946 (Miss.1987); City of Greenville v. Farmers Inc., et al., 513 So.2d 932 (Miss.1987); Gulf National Bank v. David Sturtevant, 511 So.2d 936 (Miss.1987).
As the style of the matter reflects, the chancellor agreed with the contention of the appellee as to the line between the litigants and awarded a $1,450 judgment against both appellants and a separate judgment against Carolyn Ball Graves in the sum of $3,000. The evidence on which the chancellor made his findings is recited as follows:
On August 23,1974, Aden Ball conveyed land, located in Greene County, to his daughters, Carolyn Ball Graves and Zelene Ball Burch, described as follows:
*397 Begin at a point where Big Creek intersects the section line between Sections 7 and 12, Township 1 North, Range 6 West, Greene County, Mississippi, and run thence due South 1200 feet, thence run East to the West boundary of Big Creek, thence run Northwesterly along the meanderings of Big Creek to the point of beginning.
On September 3, 1974, Aden Ball conveyed an adjacent tract to his sons, Olen Ball and Roger Lee Ball, described as follows:
Begin at a point where Big Creek intersects the section line between Sections 7 and 12, Township 1 North, Range 6 West, Greene County, Mississippi, and run thence due South 1200 feet to and for the point of beginning, thence run East to the West boundary of Big Creek, thence run Southerly along the meanderings of Big Creek to where said Big Creek intersects with the Chickasawhay River, thence run Southwesterly along the West boundary of Chickasawhay River to where it intersects the section line between Sections 7 and 12, run thence due North to the point of beginning.
In this deed, Aden Ball reserved a life estate, described as follows:
Begin at a point where Big Creek intersects the section line between Sections 7 and 12, Township 1 North, Range 6 West, Greene County, Mississippi, and run thence due South 1200 feet to and for the point of beginning, thence run East for a distance of 300 feet, thence run South for a distance of 300 feet, thence run West for a distance of 300 feet, thence run North for a distance of 300 feet back to the point of beginning.
A dispute then arose between Aden’s children, concerning the boundary between the two tracts. Carolyn and Zelene claimed that Aden had marked the boundary with a stump in 1974, having previously measured 1200 feet from Big Creek. Yet, in “late October or November of 1980,” Olen and Roger Lee repeatedly moved a post, marking the boundary, finally placing it 115 feet north of the true line.
Afterwards, on April 4, 1981, Aden Ball, Olen Ball, Betty Ball and Roger Lee Ball conveyed their interests to Murdick Hill-man and Barbara Hillman, his wife, in a deed, which read,
TOWNSHIP 1 NORTH, RANGE 6 WEST
Section 7: All that part of the West Half (W ½) lying and being West of Big Creek and North and West of Chicka-sawhay River, LESS AND EXCEPT THEREFROM a parcel of land described as beginning at a point where Big Creek intersects the section line between Sections 7 and 12 of Township 1 North, Range 6 West, Greene County, Mississippi, and run thence due South 1200 feet; thence run East to the West boundary of Big Creek; thence run Northwesterly along the meanderings of Big Creek to the point of beginning.
Four months later, when Hillman attempted to erect a fence along the “new” line, hostilities erupted between Hillman and Aden’s daughters, who claimed a boundary 115 feet south of his fence.
Several witnesses dispute this account. For example, Murdick Hillman testified that in the “early seventies,” Aden Ball had set a “big creosoted post” to divide Carolyn and Zelene’s land from Olen and Roger Lee’s land. Later, a steel rebar, set in concrete, replaced the wooden post at the same location. When Hillman later purchased the tract, Aden again stated that the rebar marked the boundary.
On January 10, 1981, Herbert Nobles, a friend of the Balls, signed a sworn statement, which read,
I, H.R. Nobles, do solmely [sic] sware [sic] in the month of November, 1980, that I and Olen Ball and Aden Ball did dig a hole and fill with gravel and drive a rod in place where the existing comer has been to my knowledge since 1975. On the west section line of Section 7-T-1N-R-6W, Green [sic] County and between Zelene Burch, James Ball, Carolyn Graves, A.G. Ball, Verna Cook Ball on the north and Olen Ball, Aden Ball and Roger Ball on the South.
*398 /S/ H.R. Nobles 1-10-81.
Likewise, Richard Flynt, a registered land surveyor, testified that Aden Ball had identified the rebar as the boundary on February 10,1981. Greene County Sheriff Tommy Miller, also present on February 10, 1981, testified that Aden Ball had referred to the rebar as the boundary.
Finally, although now complaining that he was “soused up” at the time, Aden Ball signed a sworn statement on February 10, 1981, witnessed by his sons, Olen and Roger Lee, Hillman, Nobles, Flynt, and Miller, which read,
I Aden Ball being of sound mind do swear that the rebar shown to and located by Richard Allen Flynt registered land surveyor # LS-1762 in his field book on page # 1 dated and initialed on February 10th 1981 is in the exact same place which I had marked and intended to be the dividing point in the north-south direction between Zelene Burch, [obliterated], Carolyn Graves, [obliterated] on the north and Olen Ball, Aden Ball (myself) and Roger Ball on the south, when I divided and deeded my property in Section 7, TIN, R6W, Green [sic] County, Miss, in September of the year 1974. Dated, signed, and witnessed 9:45 2/10/81.
/S/ Aden Ball.
Under the terms of the deed, Carolyn and Zelene were to receive a tract of land, extending 1200 feet south of Big Creek along the section line. Flynt found the rebar 1195 feet south of Big Creek’s center and 9.43 feet west of the section line. Guy Walker, who surveyed the land on August 23,1984, three and one-half years after the Flynt survey, found the rebar 1084.41 feet from the creek’s bank, which Aden Ball suggested as the point of origin. Consequently, Walker placed the boundary 115.-59 feet south of the rebar.
Appellants assign as error, the finding that the “North and South dividing line” between Murdick R. Hillman and Barbara P. Hillman (appellees) and Zelene Ball Burch and Carolyn Ball Graves (appellants) is a point marked by an iron pin or rebar 2295 feet South of the Northwest Comer of Section 7, TIN, R6W, Greene County, Mississippi, and the award of damages.
The legal description of the land conveyed from Aden Ball to his daughters, Carolyn and Zelene, originates where Big Creek crosses the section line. The boundary then runs south 1200 feet, east to the west boundary of Big Creek, and finally along the “meanderings of Big Creek to the point of beginning.” Similarly, the legal description of the land conveyed from Aden Ball to his sons, Olen and Roger Lee, originates at the point 1200 feet south of where Big Creek crosses the section line. The boundary then runs east to the west boundary of Big Creek, southerly along the west boundary to the section line, and finally north to the point of beginning. Significantly, both surveyors, Flynt and Walker, found the description ambiguous with reference to the tracts’ point of origin. In particular, they questioned whether the 1200 feet ran from the center of Big Creek or its bank, a distance of approximately 115 feet.
Generally, where a monument described in a deed is a stream, the “conveyance extends to and passes the title to the center thereof.” Reynolds v. Refuge Planting Co. 231 Miss. 585, 595, 97 So.2d 101, 103 (1957). Consistent with this construction, the Court has adopted a rule, analogous to the present case, involving highways instead of streams:
The principal area of conflict found among the boundary cases involving conveyances of lands abutting on highways is that which concerns the effect of a description in terms which precisely place the boundary of the premises at the inner side line of the highway, street, or alley. The view which is gaining ground, and which may be said to represent the trend of authority so far as the later cases are concerned, is that a specification of the inner side line of the street or highway as the boundary is not in itself sufficient to overcome the general rale which includes title to the center line.
Moore v. Kuljis, 207 So.2d 604, 611 (Miss.1967), quoting 12 Am.Jur.2d Boundaries, § 52 (1964). Nevertheless, the appellants *399 contend that their deed reveals a contrary intention, referring to the “west boundary” of Big Creek, which they understand to be the creek’s bank.[1]
’ Yet, due to the deed’s description, neither surveyor was able to determine the point of origin for the 1200 foot line, prompting the chancellor to rely upon extrinsic evidence. In Sumter Lumber Co. v. Skipper, 183 Miss. 595, 608-9, 184 So. 296, 298-9 (1938), this Court held that where a deed is unclear or ambiguous, resort may be had to extrinsic evidence, noting that “sometimes a controlling measure of regard will be given to the practical construction which the parties themselves have given it....” See also, Brashier v. Toney, 514 So.2d 329, 331 (Miss.1987); Clark v. Carter, 351 So.2d 1333, 1335 (Miss.1977); Moore, 207 So.2d at 619. Similarly, in Hulbert v. Fayard, 230 Miss. 1, 10, 92 So.2d 247, 251 (1957), where the defendant removed a row of stone markers, placed on the alleged boundary “several years before,” this Court, reviewing ah ambiguous deed, stated, “Acquiescence in a wrong boundary line will not establish it as a true line, but such acquiescence for a long period of time is evidence that such line is the true line.” See also, Austin v. Flurry, 227 Miss. 686, 690-1, 86 So.2d 852, 854 (1956).
In this case, there was testimony that Aden Ball set a creosote post to mark the boundary between the two tracts before conveying the land to his children. Hill-man became aware of the boundary in the “early seventies,” Nobles in 1975, and Flynt and Miller in February, 1981, all prior to the Hillman conveyance in April, 1981. This post, replaced by a steel rebar, stood 1195 feet south of Big Creek’s center, which was subject to change depending upon the water level and erosion. Finally, Carolyn Graves herself testified that the controversy first flared in late 1980; therefore, from the “early seventies” until late 1980, the steel rebar stood without dispute.
The chancellor found that the rebar represented the boundary between the parties.
With substantial evidence to support this finding, we affirm.
In addition to the injunction, allowing the Hillmans the “peaceful use, occupancy, and possession of their property,” the chancellor awarded them damages against Carolyn Ball Graves and Zelene Ball Burch, jointly and severally, in the amount of $1450, which included loss of their farming operation, destruction of their fence, destruction of catawba trees, cost of removing the fence now standing on the property, and reimbursement for the court ordered survey. The chancellor also awarded $3,000 in damages to Hillman against Carolyn Ball Graves, individually, resulting from his illegal arrest, as the chancellor states, arising from the “groundless [criminal] charges filed against him” for trespass and malicious mischief. The record supports the award of damages.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, PJJ., and PRATHER, ROBERTSON, ANDERSON and ZUCCARO, JJ., concur.
SULLIVAN, J., not participating.

. This construction means that Aden Ball intended to pass all land to his children, except that resting under water, le., from the bank to the creek’s center.