529 So.2d 655 (1988)
BONDAFOAM, INC. and Marlyn Yarbrough
v.
COOK CONSTRUCTION CO., INC.
No. 57817.
Supreme Court of Mississippi.
July 27, 1988.
Rehearing Denied August 31, 1988.
*656 Guy T. Gillespie, III, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, for appellant.
Ross F. Bass, Jr., Jean Hogan Sansing, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ZUCCARO, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Both sides appeal the judgment rendered in this suit in the Chancery Court of Yalobusha County, Mississippi. Cook Construction Co., Inc., brought suit to recover damages allegedly suffered when Marlyn Yarbrough took timber salvaged by Cook from an abandoned railroad bridges. Yarbrough took the timber from the former right-of-way according to a deed granted Bondafoam by the railroad. Yarbrough acted with the consent of Bondafoam, Inc., of which he is a major stockholder. The chancellor found that Yarbrough had a right to remove some but not all of the timber. The chancellor granted judgment in favor of Cook Construction Co., Inc., for $5,020, for two-thirds of the timber Yarbrough took, and awarded $4,000 in attorney fees to Cook. The judgment held both defendants jointly and severally liable. From this judgment, both sides appeal, assigning numerous errors. Since we find that the evidence supported the award with the exception of attorney's fees, we reverse and render only that part of the judgment below.
The dispute at trial involved who owned timber salvaged from dismantled railroad bridges along the Oxford-to-Coffeeville line.
The Illinois Central Gulf Railroad (ICG) wanted to abandon this line and contracted for its removal. Cook Construction Co., Inc. (Cook), as subcontractor to a prime contractor with ICG, dismantled the bridges but left the timber along the track right-of-way for later shipment. ICG deeded a small part of the right-of-way by quitclaim deed to Bondafoam, reserving to itself the track and appurtenances until a certain date. When the date passed, Cook had not removed the timber from the former right-of-way. At this time Yarbrough, believing that the timber now belonged to Bondafoam according to its quitclaim deed, removed the timber for personal uses. In the meantime, unbeknownst to Yarbrough or Bondafoam, Cook had negotiated to sell the timber to a third person who backed out after it was discovered that Yarbrough had taken some of the timbers. This suit followed.
On August 13, 1982, ICG contracted with Azcon Corporation, Hyman-Michaels Division ("Azcon"), for the removal of railroad track on several abandoned Mississippi railroad lines. The contract between Azcon and ICG provided for removal and track and bridges. The work description for the bridges stated:
b. Remove 64 timber trestles and four steel spans. 224 stringers, 24 timer caps, 29 concrete caps and steel spans from Bridges 582.2, 589.0 and 589.5 shall be removed by the Contractor and returned to the Railroad. All other bridge materials shall be removed and become property of the Contractor.
The contract specifications for dismantling and removing timber railroad trestles provided in part:
The Contractor shall remove the deck construction, the stringers, pile caps, piling with bracing, bulkheads and other timber trestle construction at each bridge noted in the Special Provisions. The material, except as noted in the Special Provisions, shall become the property of the Contractor and it shall be removed from the property of the railroad.

[emphasis added][1]
The exceptions which were to remain ICG's property were separately marked *657 and removed and are not at issue in this case.
On September 27, 1982, over one month after ICG contracted with Azcon, ICG quitclaimed to Bondafoam a segment of the ICG right-of-way on the Oxford-Coffeeville line. The conveyance consisted of an approximately one-mile stretch of railroad right-of-way that ran beside Bondafoam's Water Valley plant. The segment ran south from the center line of bridge No. 589.8 over the Otuckalofa Creek to the center line of bridge No. 590.7 over the Johnson Creek. The boundaries extended about one-half mile from the plant in either direction.
ICG expressly reserved for one year for its assigns:
GRANTOR reserves for itself, its successor, assigns and nominees, all railroad trackage and appurtenances thereto, including ballast, and all other improvements over and across the property hereinabove conveyed, together with an easement for said trackage and appurtenances, including ballast, and access thereto for the purpose of the dismantling and removal of all the aforesaid facilities. This Reservation shall continue for so long as is necessary to complete the removal of said railroad facility, but in no case greater than one year from the date of this deed. In the event Grantor has not removed the aforesaid tracking and appurtenances thereto within the one year period, Grantee shall inure to all right, title and interest in and to said trackage and appurtenances.

[emphasis added] The reservation thus granted Bondafoam title to any bridge materials which had not been removed by September 27, 1983.
On October 27, 1982, Azcon subcontracted the removal of the abandoned track to Cook, requiring Cook to remove all bridges on the Oxford-Coffeeville line. This contract gave Cook rights to all removed material except the material that was to be returned to ICG under the ICG/Azcon contract. The contract dealt with removal of several different lines and granted Cook until December 31, 1983, to remove the material on the Oxford-to-Coffeeville line.
Cook completed the dismantling of all bridges on the Oxford-Coffeeville line by mid-August 1983. Cook stockpiled the timbers removed from the bridges at various locations along the line, including the Pine Valley Road intersection, which was located between the plant and Johnson Creek within the right-of-way deeded to Bondafoam by ICG.
Sometime soon after September 27, 1983, Marlyn Yarbrough noticed the timbers at the Pine Valley Road intersection. Knowing that the abandoned right-of-way had become Bondafoam's, Yarbrough consulted an attorney, who examined the title and advised him that Bondafoam owned the timbers. Yarbrough obtained from Bondafoam the right to remove some of the timbers for his own use in building a bridge on his Webster County farm.
Prior to the removal of the bridges, Cook had negotiated an agreement with Burchfield, president of Ethyl Woodyard, in which Cook promised to sell all the timbers removed from the Oxford-Coffeeville line, including those stockpiled near the Pine Valley Road intersection, to Burchfield for $45,000.
On October 25, 1983, in preparation for executing his purchase agreement with Cook, Burchfield and his crew examined the stockpiles on the Oxford-Coffeeville line to confirm Cook's inventory. The inventory was confirmed at each timber stockpile with the exception of the Pine Valley Road intersection stockpile, where they discovered the missing timbers. Burchfield informed Cook of the missing timbers and refused to execute the agreement.
*658 After Burchfield refused to sign the agreement, William Pyle, a Cook employee in charge of bridge removal and sales, confirmed that the majority of timbers were missing and arranged a meeting with Sterling Allen, Bondafoam's vice-president. Allen told Pyle that Yarbrough had taken the timbers. Pyle informed Allen of Cook's claim to the timbers and that Cook would lose the $45,000 contract if the timbers were not returned. Pyle's efforts were to no avail.
Later requests also went unheeded, and Burchfield refused to negotiate a new wholesale contract with Cook because he feared Yarbrough might remove more timbers from the Oxford-Coffeeville line.
The chancellor heard the suit and rendered a lengthy opinion and finding of fact. He found that the Johnson Creek bridge was a fixture and thus was conveyed to Bondafoam, subject to removal by Cook during the one-year period. By failing to remove the timbers by September 27, 1983, the timbers became Bondafoam's property; however, the court found that not all the timber taken by Yarbrough came from bridges located on Bondafoam's property. Timber from these other bridges did not belong to Bondafoam, and it would be unjust enrichment to allow Yarbrough to keep these timbers, the chancellor found. The chancellor granted judgment to Cook in the amount of $5,202 for the timbers from off Bondafoam's property and awarded $4,000 in attorneys' fees. This appeal followed in due course.

I.

Did the Chancellor Err in the Award of Actual Damages?
Both sides argue in this Court that the chancellor erred, either in awarding damages, or in awarding too small of an amount. We begin from the premise that a chancellor's finding of either evidentiary or ultimate facts will not be disturbed if supported by substantial evidence and not manifestly wrong. See Burch v. Hillman, 525 So.2d 396 (Miss. 1988); Conservatorship of Stevens v. Patrick, 523 So.2d 319, 323 (Miss. 1988); Clark v. Myrick, 523 So.2d 79, 80-81 (Miss. 1988); Leard v. Breland, 514 So.2d 778 (Miss. 1987); Estate of Johnson v. Adkins, 513 So.2d 922 (Miss. 1987); Ford v. Lamar Life Ins. Co., 513 So.2d 880 (Miss. 1987); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259 (Miss. 1987); Gulf National Bank v. Sturtevant, 511 So.2d 936 (Miss. 1987); Brown v. Williams, 504 So.2d 1188 (Miss. 1987); Harkins v. Fletcher, 499 So.2d 773 (Miss. 1986); Dillon v. Dillon, 498 So.2d 328 (Miss. 1986).
In Mississippi, the question of whether a chattel has become a fixture to the real estate is one of intent. Love v. Union Central Life Ins. Co., 168 Miss. 408, 150 So. 794 (1933); Perkins, Livingston & Post v. Swank, 43 Miss. 349, 362 (1870); Weathersby v. Sleeper, 42 Miss. 732, 8 Miss (7 Howard) 421 (1843). This is a question of fact. Ziller v. Atkins Motel Co., 244 So.2d 409 (Miss. 1971).
The chancellor found that ICG's intent gleaned from the documents before him was that the railroad bridge timbers were to be fixtures that could be removed from the right-of-way prior to September 27, 1983. If not removed by the expressed expiration date, the timbers passed to Bondafoam. We cannot hold this finding to be unsupported or manifestly wrong.
Likewise, we cannot find manifestly incorrect the chancellor's division of the timbers. Before the chancellor was evidence of the number and worth of timbers and testimony that roughly only one-third of the timbers stacked at the crossing actually came from Bondafoam's property.
We affirm so much of the judgment as gave Bondafoam timbers from its right-of-way, while awarding partial damages to Cook on the basis of unjust enrichment.

II.

Did the Chancellor Err in Awarding Attorney's Fees?
Bondafoam and Yarbrough argue the $4,000 attorney's fee award was not supported by the record. We agree.

*659 With the sole exception of punitive damages cases in the absence of contractual provision or statutory authority therefor, this Court has never approved awarding trial expenses and attorney's fees to the successful litigant. It has consistently been our view that such expenses are not allowable as part of the costs.
Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss. 1986); Stanton & Associations, Inc. v. Bryant Construction Co., Inc., 464 So.2d 499, 502 (Miss. 1985); Litten v. Grenada County, Mississippi, 437 So.2d 387, 388 (Miss. 1983); Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979).
There is no contractual or statutory authority here, so the only rationale for awarding attorney's fees must be the appropriateness of punitive damages.
If Yarbrough acted within his rights as Bondafoam's assignee in taking timbers, and we hold that he did, it obviously appears that Yarbrough did not act with such reckless or wanton disregard for Cook's right as might entitle Cook to punitive damages. The award of attorney's fees must be overturned.
With the exception of the attorney's fees, the judgment rendered on the record as submitted from the Chancery Court of Yalobusha County, Mississippi, is hereby affirmed.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
GRIFFIN, J., not participating.
NOTES
[1] inventory showed that the following bridge materials removed from the Oxford-Coffeeville line were stockpiled near the Pine Valley Road intersection:
 150 14-foot stringers
 10 28-foot stringers
 12 caps
 180 decking pieces
A "cap" is a piece of timber, generally measuring 14 inches X 14 inches X 14 feet, that sits on top of the piling in a bridge.
"Stringers" are the main bridge members that compose the bridge, generally found in two lengths: 14 feet and 28 feet and measuring 7 X 16 or 8 X 16. "Decking" refers to flooring. (R. 315-16)