United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2003

Charles R. Fulbruge III
Clerk

**REVISED APRIL 8, 2003**

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 00-60103

CIT GROUP/EQUIPMENT FINANCING, INC

Plaintiff-Counter Defendant-Appellee,

VERSUS

CONDERE CORPORATION, doing business as Service Fleet Tire
Company, doing business as
Fidelity Tire and Manufacturing Company

Defendant-Counter Claimant-Appellant.

Appeals from the United States District Court
For the Southern District of Mississippi, Jackson

(5:98-CV-5-BrS)

Before DeMOSS and STEWART, Circuit Judges, and LITTLE,[*] District

Judge.

PER CURIAM:[**]

This is an appeal of two final judgments entered by the district

court.  Plaintiff-Counter Defendant-Appellee, CIT Group/Equipment

---

[*]District Judge of the Western District of Louisiana, sitting by
designation.

[**]Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Financing, Inc., ("CIT"), filed a replevin action in the district court seeking immediate possession of equipment that was in the possession of Defendant-Counter Claimant-Appellant, Condere Corporation ("Condere"). Condere posted a bond allowing it to continue to possess the equipment and made counter claims asserting that they had the right to have the lease reinstated because the lease was part of its bankruptcy estate, or, alternatively, the equipment was not subject to a lease but rather a security agreement, that it had the right of redemption, and that the equipment was a fixture. The district court ruled in favor of CIT and ordered Condere to return the equipment. Condere appealed without supersedeas. While the appeal was pending, the parties settled two issues: Condere allowed CIT's third-party purchaser to remove the equipment and Condere paid CIT to release the lien on certain equipment used as collateral for the lease. This Court then ordered a stay of the appeal of the replevin action and remanded the case for a hearing on damages. The district court held a hearing and found CIT was entitled to $1,650,815.17 in damages. Condere now appeals the final judgment in the replevin action and the final judgment awarding damages. We affirm the two judgments of the district court for the reasons stated therein and summarize those reasons below.

## BACKGROUND

Condere operated a tire manufacturing plant in Natchez,

Mississippi. On December 14, 1993, the City of Natchez executed a Bill of Sale to Condere covering the equipment at issue in this case. Both the City's resolutions authorizing the sale and the Bill of Sale itself referred to the equipment as "personal property."

Also around the same time, because Condere needed cash, they proposed and CIT approved a transaction whereby CIT would purchase the equipment at issue, mainly eleven tire presses, from Condere for $1,300,000.00 and lease it back to Condere in a "sale-leaseback" transaction, which is a common commercial transaction.

On December 21, 1993, the transaction was closed. Condere executed a Bill of Sale to CIT for the equipment, which was to be covered by a Master Lease ("Lease"), and Condere received $1,300,000.00 for the equipment. The Lease provided for monthly lease payments of $23,468.40 per month for 60 months, the last being due December 31, 1998. At the end of the Lease, Condere had the option of purchasing the equipment or returning it to CIT at Condere's expense. Condere was required to give CIT reasonable written notice prior to expiration of the lease term as to which of these options it would exercise. Condere has never given any written notice to CIT.

On December 21, 1993, Condere also executed a separate Security Agreement to Collateralize the Master Lease ("Security Agreement") covering different equipment for the purpose of providing collateral to CIT in the event of a default on the Lease by

3

Condere. This equipment was not covered by the Bill of Sale to CIT.

U.C.C. Financing Statements were filed by CIT as the "Lessor" under the Lease and as "Secured Party" for the equipment covered by the Lease and Security Agreement. At the time the transaction was closed, CIT required Condere to install tags with "CIT" and a number on all equipment covered by the Lease that did not have identifying serial numbers. The Lease form was one commonly used.

In all the Condere corporate documents authorizing the transaction, the correspondence between CIT and Condere, and the transaction documents themselves, the transaction was always referred to as a "Lease." The invoices Condere received from CIT were for "rent." As required by Mississippi law, on every lease payment made by Condere to CIT, the appropriate amount of Mississippi sales tax was included.

In the transaction documents, Condere made numerous representations and warranties to CIT that all the equipment covered by the Lease and the Security Agreement was personal property.

Condere made monthly lease payments of $23,468.40 rent plus $352.03 sales tax to CIT on the Lease but was two payments delinquent when, on May 13, 1997, Condere filed for bankruptcy.

After filing for bankruptcy, Condere made no further payments on the Lease, and on June 24, 1997, CIT filed a Motion to set a deadline for Condere to reject or accept the Lease. On September

4

11, 1997, Condere rejected the Lease and an Agreed Order was entered by the bankruptcy court to that effect, but the Order contained the provision "with the Debtor in possession reserving the right to litigate whether said instrument is a lease or a financing transaction, together with any other rights, claims or defenses incident to such determination." The automatic stay was lifted as to all equipment covered by both the Lease and Security Agreement, but Condere made no further payments on the Lease thereafter.

Condere took no steps to litigate any issues regarding the rejected Lease from September 11, 1997, until it filed its responsive pleadings in the replevin action on February 13, 1998. Condere also had a second lease from CIT covering computer equipment (which is not the subject of this case). Condere assumed this lease in the bankruptcy proceedings and brought all payments current. No claim was made that the second lease was not a true lease.

Because Condere had defaulted and rejected the Lease, CIT actively sought buyers for the equipment covered by both the Lease and the Security Agreement. Condere was aware of CIT's efforts and, in fact, CIT contacted Condere about Condere's interest in purchasing the presses several times. Nevertheless, Condere made no effort to bring the Lease current or make any payments on it. Condere and its successor Titan Tire Corporation of Natchez simply did nothing and continued to use the equipment without paying.

On December 8 and 9, 1997, representatives of CIT and Specialty Tire Company ("Specialty") inspected the presses in the Natchez plant. Specialty made an offer to CIT to purchase the eleven tire presses for $250,000.00 by a letter dated December 11, 1997, conditioned upon acceptance that same day. CIT accepted the offer by a letter of the same date.

On December 12, 1997, CIT's attorney wrote to Condere's attorney and informed him of CIT's contract to sell the eleven tire presses. Condere refused to turn over the presses to CIT for delivery to Specialty.

A week later, on December 18, 1997, Condere, without seeking or obtaining approval of the bankruptcy court, tendered $224,000.00 by a cashier's check to CIT's counsel stating that "the debtor has elected to cure the default in connection with the CIT equipment lease." The $224,000.00 amount included an estimate of CIT's attorney's fees to that date. Condere did not introduce evidence that this amount was correct nor was there bankruptcy court approval of any transaction to "cure the default." CIT's attorney wrote to Condere's attorney on December 29, 1997, returning the $224,000.00 check advising that CIT could not accept it.

When Condere sought to "cure the default in connection with the CIT equipment lease," no mention was made of a security agreement. No request was made by Condere about what would be necessary to bring any "loan" current or pay off a "loan." While Condere, when it rejected the Lease in bankruptcy court, reserved the right to

6

litigate whether it was a lease or a security agreement, Condere made no attempt at this time to enjoin the sale or litigate any issue as to whether the Lease was a security agreement.

When CIT sought to take possession of the equipment, including the eleven tire presses sold to Specialty, Condere refused to surrender it. CIT filed a replevin action in January 1998, seeking immediate possession of the equipment. As is allowed by Mississippi law, Condere posted a bond with a surety to prevent CIT from obtaining immediate possession. No approval was sought or obtained in the bankruptcy court and Condere concedes that Titan arranged for the bond. This allowed Condere and subsequently, Titan Tire Corporation of Natchez, to continue using the equipment without paying. Ultimately, the Lease expired by its own terms in December 1998. There is no evidence that Condere exercised its option to purchase the equipment covered by the Lease.

In May 1998, Specialty, the purchaser of the eleven tire presses, filed suit in Pennsylvania against CIT seeking damages in excess of $12,000,000.00 due to CIT's inability to deliver the eleven tire presses CIT had sold to Specialty.

Meanwhile, in the replevin action Condere made counter-claims asserting that they had the right to have the Lease reinstated because it was part of their bankruptcy estate, or, alternatively, the equipment was not subject to a lease but rather a security agreement, that they had the right of redemption, and that the equipment was a fixture. There was a trial on October 13, 1999.

7

The district court on January 25, 2002, ruled in favor of CIT and ordered Condere to return the equipment. Final Judgment was entered on January 27, 2002.

Because of the CIT/Specialty litigation, the district court ordered Condere to post a supersedeas bond of $12,000,000.00 before appealing. Condere appealed without supersedeas.

On February 4, 2000, summary judgment in favor of CIT was granted in the Specialty litigation and the case was dismissed. This ruling was affirmed on appeal on November 20, 2000.

While the appeal was pending in this present case, the parties settled two issues: Condere allowed Specialty to remove the equipment and Condere paid CIT to release the lien on equipment used as collateral for the Lease. This Court then ordered a stay of the appeal of the replevin action and remanded the case for a hearing on damages.

The district court held a hearing on August 20, 2001, concerning damages. The court conducted a detailed analysis of the damages allowed under the Lease for: past due lease payments, late fees, fees for continued use of the equipment by Condere without payment after expiration of the Lease, the cost to CIT of having the equipment removed, and attorney's fees and costs. CIT presented evidence, including expert testimony from Lawrence McCabe, a former general counsel of a Fortune 500 company, concerning the necessity of the legal fees incurred by CIT, including the fees charge by out-of-state lawyers at the Otterbourg firm. The district court

8

awarded CIT $1,650,815.17 in damages.

Condere now appeals the final judgment in the replevin action in so far as the court held that: 1) the Lease was rejected by Condere and therefore not part of Condere's bankruptcy estate and Condere did not have a right to have the Lease reinstated; 2) the Lease was not a disguised security agreement; 3) Condere had no right to redeem the equipment; and, 4) the equipment was personal property.

Condere also appeals the district court's final judgment on damages making four arguments: 1) no damages incurred by CIT were caused by Condere; 2) the Lease limited CIT's recovery; 3) the district court should not have considered the testimony of CIT's expert, Lawrence McCabe; and, 4) the district court should have reduced the fees of CIT's out-of-state counsel, the Otterbourg firm.

## DISCUSSION

**I.    Whether the district court erred in finding the Lease was not part of Condere's bankruptcy estate and therefore Condere had no right to have the Lease reinstated.**

It appears Condere asserts that if the Lease really is a lease then the Lease and Security Agreement, along with the equipment covered, were part of the bankruptcy estate and therefore Condere had the right, under the bankruptcy code, to reinstate the Lease upon full payment of all past due amounts. However, on September 11, 1997, the bankruptcy court entered an order, that was signed by both parties, finding that Condere had rejected the Lease

9

and the court then lifted the automatic bankruptcy code stay covering all the equipment that CIT was seeking to recover. The effect of Condere rejecting the Lease and the court then lifting the stay was to "return the parties to whatever legal relationship existed before commencement of the [bankruptcy] case." ***In re Malone Properties, Inc.***, 1992 WL 611459 at *2 (Bankr. S.D. Miss. 1992); *see **Matter of Garfinkle***, 577 F.2d 901, 904-05 (5th Cir. 1978) (holding, under the old bankruptcy code, that after rejection the bankruptcy estate no longer has an interest); *and see also **Matter of Austin Dev. Co.***, 19 F.3d 1077, 1081-83 (5th Cir. 1994) (finding ***Garfinkle's*** holding to be persuasive even under the new code).

Condere was in default before filing for bankruptcy. The agreement between the parties controls, not the bankruptcy code, and the language in the Lease does not give Condere the right to reinstate the Lease after defaulting. Condere does not cite any authority that supports its assertion that the Lease remains part of the bankruptcy estate but only cites to bankruptcy code provisions that allow for cure and assumption, which are inapplicable because the Lease controls. Accordingly, the district court properly rejected Condere's argument that Condere could reinstate the Lease after being in default and rejecting the Lease and the decision is affirmed.

**II. Whether the district court's finding that Condere failed to**

**prove the Lease was a disguised security agreement was clearly erroneous.**

The district court's finding that the Lease was not a security agreement is, under Mississippi, a factual determination depending on the intent of the parties and therefore subject to the clearly erroneous standard of review. **MISS. CODE ANN. § 75-1-201(37)**.[1] A security interest under Mississippi law is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." **MISS. CODE ANN. § 75-1-201(37)**. According to the district court, Condere has the burden of proving that the Lease was a disguised security agreement.

In the present case the district court made the following findings, which we agree with:

1. An option to purchase the equipment does not of itself make a lease a security agreement but an agreement that the lessee has the option to become the owner of the equipment upon completion of a lease for nominal consideration does make a lease one intended to be a security. **MISS. CODE ANN. § 75-1-201(37)**. Condere offered no credible evidence that the option price in the Lease was nominal.

2. Condere's corporate resolutions authorized both a lease and a security agreement – two separate documents.

3. All the transaction documents describe the Lease as a lease. The form is one commonly used for leases.

---

[1]Neither the Lease nor Security Agreement contains a choice of law provision and the contracts were to be performed in, and the subject matter of the contract is in, Mississippi and therefore Mississippi law governs. *Todd v. Deposit Guar. Nat. Bank*, 849 F. Supp. 1149 (S.D. Miss. 1994). Additionally, the lease was executed in 1993, so the 1990 version of **MISS. CODE ANN. § 75-1-201 (37)** applies and not the current version.

11

4. Contemporaneously, a security agreement was executed, demonstrating that the parties recognized the distinction between a security agreement and a lease and followed the directives of Condere's resolutions.

5. Another equipment lease from CIT was involved, and Condere assumed it in the bankruptcy court, never claiming it was a security agreement.

6. Sales tax was added to each "rent" payment. This is applicable only to a lease.

7. The Lease had to be a lease for Condere to reject it in bankruptcy (see issue I *supra*). Condere had no right to reject a security agreement.

8. When Condere tendered $224,000.00 it was expressly stated to be for the purpose of curing "lease" defaults.

9. Not until this suit was filed did, Condere take any affirmative act to secure a judicial determination that the Lease was a security agreement.

Thus, the district court found that the evidence established that the Lease was exactly what it was: a lease. CIT had title to the equipment and therefore was entitled to immediate possession because Condere was in default under the Lease and Security Agreement before it filed for bankruptcy (see *supra*). Condere on appeal makes several factual arguments that basically revolve around their contention that the reason for the arrangement between Condere and CIT was because Condere was "cash starved." This, however, does not overcome the findings of the district court concerning the intent of the parties and may in fact support the finding that the Lease was a lease. Accordingly, the finding of the district court that the Lease was a lease is not clearly

12

erroneous and is affirmed.

Additionally, whether Condere had the right to redeem the equipment and did in fact properly redeem the equipment depends on finding the lease was really a security agreement. Because we agree with the district court that the Lease really was a lease, there is no need to address this issue.

**III. Whether the district court's finding that the equipment was personal property was clearly erroneous.**

In Mississippi, the question of whether an object is a fixture or personal property is one of intent and a question of fact. *Bondafoam, Inc. v. Cook Const. Co.*, 529 So. 2d 655, 658 (Miss. 1988). The general rule is that whatever is affixed to land becomes part of the realty; however, Mississippi courts recognize that the parties, such as a lessor and lessee, can agree between themselves as to whether or not something is to be considered a fixture and the parties can incorporate this agreement into a lease. *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42 (Miss. 1992).

In the present case, the Lease in the first and second paragraphs describes the equipment as personal property. Further the eighth paragraph of the Lease states that the equipment shall remain personal property. The Bill of Sale refers to the equipment as personal property and the Security Agreement, which collateralizes the Lease, states that regardless of how the property is affixed it shall remain personal property. Accordingly, the intent of the parties is clear and the district court did not err in finding the

13

equipment was personal property and the decision is affirmed.

**IV.  Whether the district court erred in awarding damages.**

A district court's factual determination of damages is subject to clear error review and legal determinations are reviewed *de novo*.  ***Sockwell v. Phelps***, 20 F.3d 187, 192 (5th Cir. 1994). Condere makes four, basically factual, arguments concerning damages: 1) no damages incurred by CIT were caused by Condere; 2) the Lease limited CIT's recovery; 3) the district court should not have considered the testimony of CIT's expert, Lawrence McCabe; and, 4) the district court should have reduced the fees of CIT's out-of-state counsel, the Otterbourg firm.

The factual history of this case indicates that Condere brought this damages judgment upon itself and the district court did not err.

First, as to whether Condere caused the damages.  Condere's argument is based on its earlier argument that had it been given the right of redemption and had CIT complied with the notice requirements, CIT would not have incurred any damages.  This argument depends on a finding that Condere had the right of redemption and properly exercised the right, a finding the district court properly rejected.

Second, Condere claims Section 11 of the Lease limits recovery in a default situation.  This argument was not made until post-trial briefing to the district court.  Nonetheless, Section 11 of

14

the Lease refers only to CIT's right if Condere is in default during the term of the Lease. Condere's holdover and use of the equipment for 21 months after the Lease term is not limited by Section 11. Condere's limitation argument does not make sense because it only applies to the past due lease payments and if adopted would result in Condere possibly paying more in damages.

Third, as to Condere's argument that the court should not have considered the testimony of CIT's expert, Lawrence McCabe, because according to Condere, McCabe's area of experience was not in bankruptcy matters involving leases nor in Mississippi law. Condere presents no legal arguments but only its disagreement with the district court that McCabe was qualified to testify. CIT, however, used McCabe, a former general counsel of a Fortune 500 company, to testify as to whether the expenses incurred by CIT in the litigation between CIT and Condere and CIT and Specialty were reasonable. There is nothing to indicate McCabe lacked experience in the area for which he offered testimony.

Fourth, as to whether the out-of-state attorney's fees were reasonable. Condere argues that the rate charged by the Otterbourg firm was unreasonably excessive compared to local rates and therefore should have been reduced. The Lease obligates Condere to pay attorney's fees and the fees in this case were, in part, the result of Condere's refusal to surrender the equipment, which caused Specialty to bring suit against CIT. In summary, the bankruptcy litigation, the Mississippi litigation, and the

15

Pennsylvania litigation were intertwined and CIT sought the assistance of the Otterbourg firm in coordinating all the litigation. The district court was correct in accepting CIT's evidence that the fees were necessary and reasonable when Condere presented no evidence to the contrary but merely complained about the fees.

Accordingly, the district court did not err in awarding damages. Therefore, the decision is affirmed.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and arguments, for the reasons set forth above we conclude that the district court did not err in deciding any issue now appealed and therefore both judgments are affirmed. **AFFIRMED.**